UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH ROSENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV777SNL |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff has filed this employment discrimination action alleging that defendant employer violated Title VII by retaliating against plaintiff for reporting sexual harassment of a female co-worker by a male supervisor. Plaintiff alleges that he was transferred to another Missouri Department of Corrections facility (MDOC), that he was suspended for five (5) days without pay, and that he was denied a promotion. This matter is before the Court on the defendant's motion for summary judgment (#33), filed November 17, 2006. Plaintiff has filed a response. This cause of action is set for jury trial on the Court's docket of March 5, 2007.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997), citing Bialas v. Greyhound Lines, Inc., 59 F.3d. 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations

omitted).  The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.  Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party."  Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999).  However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy.  Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.".  Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004).  A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy."  Howard, at 800 *quoting* Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999).  Furthermore, a plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support for the plaintiff's allegations.  Howard, at 800-01 (citations omitted).  The Court is only obligated to consider "admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state

3

legal conclusions in fact.".  Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d.

716, 723 (8th Cir. 2003).

The facts in this case are virtually undisputed and for the most part the Court adopts the

defendant's Statement of Undisputed Material Facts as to the issues relevant to the instant

motion.[1]

In April 2004, plaintiff was employed by the MDOC as a Correctional Officer III (COIII).

He was assigned to work at the Potosi Correctional Center.  COIII's are supervisory personnel

and have the unofficial title of Lieutenant.

On April 12, 2004, Correctional Officers Mary Probst and Christina DeLeal told plaintiff

that they wanted to report a claim of sexual harassment involving a male superior officer,

Corrections Supervisor I (CSI) Branch.  CSI's have the unofficial title of Captain.  Plaintiff asked

both women if they had reported their complaints with CSII Major Bouchard.  They informed

plaintiff that they had but now wanted to see Superintendent Don Roper.  During the relevant

time-period, Superintendent Roper was the Superintendent of Potosi Correctional Center.

Plaintiff called Superintendent Roper and informed him that two (2) female correctional

officers wanted to report a claim of sexual harassment.  Superintendent Roper requested plaintiff

to escort the women to his office.  Plaintiff walked both women over to Superintendent Roper's

office and sat in while they discussed their claims with Superintendent Roper.  Plaintiff did not say

anything during the meeting among Probst, DeLeal, and Superintendent Roper.  Other than sitting

in on the meeting, plaintiff did not have any further involvement regarding Probst and DeLeal's

sexual harassment claims.  Defendant's Exhibit Q - Plaintiff's Deposition, pgs. 24-26.

_____

[1]Defendant included its Statement of Undisputed Material Facts as part of its
memorandum in support of its summary judgment motion.  In the future, counsel should filed its
Statement of Undisputed Material Facts as a separate document for the Court's consideration.

On April 13, 2004 Wendy Flores submitted a memo to Major Bouchard claiming that plaintiff had subjected her to sexual harassment.  Defendant's Exhibit A.  This same day, COII Mike Lawson submitted a memo to Major Bouchard detailing an incident in which plaintiff engaged in unprofessional behavior.  Defendant's Exhibit B.  On this same day, COII submitted a memo to Captain Branch detailing an incident in which plaintiff engaged in unprofessional behavior.  Defendant's Exhibit D.  Finally, on this same day, Sergeant Jason Crawford submitted a memo to Major Bouchard detailing an incident in which plaintiff engaged in unprofessional behavior.  Defendant's Exhibit E.

On April 14, 2004 COII Tim Lancaster submitted a memo to Major Bouchard detailing an incident in which plaintiff engaged in unprofessional behavior.  Defendant's Exhibit C.  On April 14 and 15, 2004 COIII William Milan submitted a memo to Captain Branch detailing an incident in which the plaintiff engaged in unprofessional behavior.  Defendant's Exhibits F and G.

On April 16, 2004 Steve Long, the Assistant Director of Adult Institutions, submitted a memo to George Lombardi, the Director of Adult Institutions, recommending and/or supporting a decision to transfer plaintiff to the Farmington Correctional Center while an investigation into plaintiff's conduct was pending.  Defendant's Exhibit J.

On May 20, 2004 Major Bouchard submitted a memo to Assistant Superintendent Fred Johnson which advised Johnson that COI Edward Tourville had told Major Bouchard about an incident in which plaintiff engaged in unprofessional behavior.  Defendant's Exhibit I.

On May 19 and 21, 2004 the Administrative Review Committee (ARC) convened in order to investigate the claims of unprofessional conduct against plaintiff.  The ARC questioned witnesses and reviewed documents as part of this investigation.  Defendant's Exhibit K.  Plaintiff was present at the ARC proceedings and was allowed to ask questions of the witnesses.  The

ARC heard testimony from 23 witnesses and reviewed over 31 documents. Defendant's Exhibit K. The ARC found there was insufficient evidence to support the sexual harassment charges lodged against the plaintiff. Defendant's Exhibit K. However, the ARC found that there was sufficient evidence to substantiate several of the charges of unprofessional behavior by the plaintiff. Defendant's Exhibit K. The ARC found that plaintiff had, on several occasions, disregarded authority, created dissension among staff, acted unprofessionally toward administrative staff, and acted unprofessionally toward supervisory staff. Defendant's Exhibit K. The ARC concluded that a rift existed between plaintiff and Captain Branch. The ARC also concluded that staff at Potosi was choosing sides in the plaintiff/Branch rift. Defendant's Exhibit K. The ARC concluded that the rift between Captain Branch and plaintiff was detrimental to Potosi Correctional Center. Defendant's Exhibit K.

On June 22, 2004 Director Lombardi sent plaintiff a letter informing him that as a result of the ARC's findings, plaintiff would be suspended for five days. Defendant's Exhibit L. Also, on June 22, 2004 Director Lombardi sent plaintiff a letter informing him that effective July 6, 2004 plaintiff would be transferred to the Eastern Reception and Diagnostic Correctional Center. Defendant's Exhibit M. Meanwhile, plaintiff served his suspension from July 8, to July 12, 2004. Defendant's Exhibit L. Plaintiff was transferred to the Eastern Reception and Diagnostic Correctional Center for the good of the MDOC and to give the plaintiff every opportunity to further his career. Plaintiff's Exhibit M.

On June 8, 2004 Superintendent Roper, Major Bouchard, and Assistant Superintendent Ian Wallace conducted interviews for a vacant Corrections Supervisor I position at Potosi Correctional Center. Plaintiff was interviewed for this position. Defendant's Exhibit O. The promotion committee selected Steve Bowers, a Corrections Supervisor I from the Eastern

Reception and Diagnostic Correctional Center. Defendant's Exhibit O. Bowers' selection for the Corrections Supervisor I position at Potosi was considered to be a lateral move since he already held the same position at Eastern Reception and Diagnostic Correctional Center.

Defendant first asserts that plaintiff has failed to make out a *prima facie* case of Title VII retaliation because he cannot demonstrate that his actions constitute protected activity under Title VII. Defendant further contends that any actions it took with respect to plaintiff were for legitimate, non-discriminatory reasons and that plaintiff lacks sufficient evidence of pretext. Defendant further contends that the position of Corrections Supervisor I was given to Bowers, a higher ranking and more qualified employee; furthermore, the hiring was considered to be a lateral transfer. Plaintiff contends that his actions were protected activity under Title VII, that the actions by the defendant regarding his transfer and suspension were discriminatory and the reasons given pretextual. [2]

After careful consideration of the matter, review of the parties' pleadings, submitted exhibits, and relevant caselaw, the Court finds that plaintiff has failed to establish a *prima facie* case of Title VII retaliation.

Plaintiff has presented no direct evidence of retaliation; therefore, the Court will apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973). *See*, Gagnon v. Sprint Corp., 284 F.3d. 839, 849-50 (8th cir. 2002). Under the burden-shifting framework of McDonnell, *supra.*, a plaintiff must first demonstrate a *prima facie* case of

---

[2]Nowhere in his response does plaintiff address the "promotion" of Bowers. Plaintiff simply denies defendant's factual statements #48 and #49 that Bowers was chosen on his qualifications alone and that no evidence exists showing that plaintiff was more qualified than Bowers. Since plaintiff did not argue this issue, did not present any affirmative evidence to the Court on this issue, and did not present any legal authority on this issue, the Court deems the issue of failure to promote as retaliation to be abandoned.

retaliation. If the plaintiff meets this burden, the burden shifts to the defendant employer to rebut the *prima facie* case by articulating a legitimate, non-discriminatory reason for its adverse employment decision. If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason was a pretext. *See,* Kasper v. Federated Mutual Ins. Co., 425 F.3d. 496, 502 (8th Cir. 2006).

To establish a *prima facie* case of retaliation, Rosenberg must show 1) he engaged in a protected activity; 2) he suffered an adverse employment action; and 3) a causal connection between the protected activity and the adverse employment action. Box v. Principi, 442 F.3d. 692, 696 (8th Cir. 2006); Kasper, at 502; Tolen v. Ashcroft, 377 F.3d. 879, 883 (8th Cir. 2004). After careful consideration of the matter, the Court determines that plaintiff has failed to establish a *prima facie* case of retaliation against the defendant because plaintiff was not engaged in a protected activity during the relevant time-period.

Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be opposing an act of discrimination made unlawful by Title VII[3] or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[4] *See*, Pope v. ESA Services, 406 F.3d. 1001, 1010 (8th Cir. 2005); Hunt v. Nebraska Public Power Dist., 282 F.3d. 1021, 1028 (8th Cir. 2002); 42 U.S.C. §2000e-3(a).

Plaintiff contends that by asking the two female co-workers if they wanted to report their claims to Major Bouchard, by calling Superintendent Roper to inform him that two female co-workers had sexual harassment claims, and accompanying them to Superintendent Roper's office

---

[3]Sometimes referred to as "the opposition clause".

[4]Sometimes referred to as "the participation clause".

"plaintiff's actions were done to oppose practices prohibited by Title VII." Plaintiff's Response to Defendant's Summary Judgment Motion (#36), pg. 3. Upon review of the record before this Court, the Court finds that plaintiff did not engage in a protected activity in opposing any discrimination made unlawful under Title VII.

The undisputed facts are that Probst and DeLeal approached plaintiff with their sexual harassment claims. He asked if they wanted to see Major Bouchard, they said they wanted to see Superintendent Roper. There is no evidence that he had any more conversation with them then simply ascertaining that they wanted to see Superintendent Roper. *See*, Plaintiff's Deposition, pg. 10.[5] He then simply called Superintendent Roper to inform him that two female co-workers had sexual harassment claims and wanted to see him. Upon Superintendent Roper's request, plaintiff accompanied the women to his office. Plaintiff did not even voluntarily escort the women nor indicate by any action his belief that they had actually been harassed. Finally, his last "involvement" was to sit silently in the meeting with Superintendent Roper and the two female claimants. None of plaintiff's conduct affirmatively demonstrates in anyway his opposition to discrimination made unlawful by Title VII. In fact, he testified that the only reason he called Superintendent Roper was because it was MDOC policy to do so. Plaintiff's Deposition, pg. 10. The only reason he stayed in the meeting was because Superintendent Roper instructed him to stay. Plaintiff's Deposition, pg. 10. As far as plaintiff was concerned, his involvement with this event was no more than "doing my job". Plaintiff's Deposition, pg. 11. The Court concludes that Rosenberg did not "oppose" an unlawful practice under Title VII. *See*, Bogren v. State of

---

[5]In the future, defendant's counsel shall properly submit deposition testimony by including the cover page of the deposition showing the date of the deposition, the deponent's name, and counsel attending the deposition. Exhibit Q as submitted is woefully deficient as to authenticating indicia. If such deposition testimony is submitted in the future, it will be excluded from consideration.

<u>Minnesota</u>, 236 F.3d. 399, 407-08 (8th Cir. 2000); <u>Brower v. Runyon</u>, 178 F.3d. 1002, 1005 n.3 (8th Cir. 1999)(plaintiff failed to demonstrate opposition to unlawful discriminatory practice because her action did not show a good faith belief that defendant had violated Title VII).[6]

Since the plaintiff has failed to present any evidence that he opposed discrimination made unlawful by Title VII, the Court finds that plaintiff has failed to establish a *prima facie* case of retaliation. In light of these findings, the Court need not address any further issues presented in the summary judgment motion.

Having found no material issues of fact regarding the plaintiff's failure to demonstrate that he was engaged in a protected activity, and as a matter of law, plaintiff did not establish a *prima facie* case of retaliation, the Court will grant summary judgment to the defendant.

Dated this ____13th____ day of February, 2007.

SENIOR UNITED STATES DISTRICT JUDGE

---

[6]Plaintiff cites only a twenty (20) year old Texas district court case in support of his argument that he demonstrated opposition to unlawful discrimination under Title VII. Unfortunately, <u>Jenkins v. Orkin Exterminating Co., Inc.</u>, 646 F.Supp. 1274 (E.D.Tex. 1986) is easily distinquishable on its facts. In <u>Jenkins</u>, a female employee confided in plaintiff that she was being sexually harassed by a supervisor. Plaintiff informed his supervisor of the female employee's complaint and requested that an investigation take place. Plaintiff contacted his superior from his home, using his home telephone. The female employee never made the complaint to plaintiff's supervisor herself, nor was she ever contacted by plaintiff's supervisor. The district court found that plaintiff's actions in telephoning his superior, making the actual complaint of sexual harassment on behalf of the female employee and seeking an investigation, were acts done in opposition to the alleged sexual harassment. <u>Jenkins</u>, at 1278. In the present case, plaintiff did not make the complaint on behalf of Probst and DeLeal and did not seek an investigation of the complaints. He made no affirmative act which even remotely indicates his "opposition" to sexual harassment.